UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ARIEL P.,[1]

                         Plaintiff,                    DECISION AND ORDER

-vs-

                                                   1:21-CV-0049 (CJS)

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

## I. INTRODUCTION

In January 2021, Ariel P. ("Claimant") filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of Social Security's ("Commissioner") denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Compl., Jan. 12, 2021, ECF No. 1. Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., Jan. 4, 2022, ECF No. 19; Def.'s Mot., Feb. 1, 2022, ECF No. 20. For the reasons set forth below, Claimant's motion for judgment on the pleadings [ECF No. 19] is denied, the Commissioner's motion [ECF No. 20] is granted, and the Clerk of Court is directed to close this case.

---

[1] The Court's Standing Order issued on November 18, 2020, directs that, "in opinions filed pursuant to . . . 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

II. BACKGROUND

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

A. Claimant's Applications

Claimant filed applications for DIB and SSI benefits in July 2018, alleging a disability onset date of July 18, 2018. Transcript ("Tr."), 199,[2] June 16, 2021, ECF No. 11. She listed multiple physical and medical conditions that she claimed limited her ability to work: post traumatic stress disorder (PTSD), severe traumatic disorder, anxiety, prior chemical dependency, and asthma. Tr. 203. In November 2017, Claimant's records were reviewed by both a state agency medical consultant and a state agency psychological consultant, and it was determined that Claimant was not disabled. Tr. 84.

B. Claimant's Hearings Before the ALJ

After the Commissioner denied her applications at the initial level, Claimant appeared with counsel on March 11, 2020 for a hearing before an Administrative Law Judge ("ALJ"). Tr. 37. In a brief submitted before the hearing, Claimant's counsel stated that Claimant is 29 years old and a high school graduate, but that she had a "504 plan" in school to address some of her learning issues. Tr.261. Counsel stated that Claimant's "anxiety has caused her to lose jobs," and that she "does experience migraines . . . . [but] her most severe problems are psychiatric, leading to isolation, panic attacks, nightmares and flashbacks, poor ability to concentrate and focus, and inability to handle any stress."

---

[2] The page references from the transcripts are to the bates numbers inserted by the Commissioner, not the pagination assigned by the Court's CM/ECF electronic filing system.

Tr. 261. Counsel argued that all of these functional restrictions prevent Claimant from sustaining any type of work. *Id.*

At the hearing, Claimant testified that the most significant problem that prevents her from working is her PTSD, which triggers memories of her sexual abuse by her father and grandfather, and causes tunnel vision, flashbacks, and panic attacks that bring on her migraines and intense sweating. Tr. 43–44. She has had a string of jobs as a waitress and retail clerk that all ended in the same pattern: she would be very successful the first couple of weeks, but start falling behind and getting uncomfortable, which would trigger flashbacks of her abuse and her tunnel vision. Tr. 45. Once this began happening, she would invent excuses to miss work, and soon thereafter lose the job for excessive absenteeism. Tr. 45.

In addition to the anxiety and PTSD, Claimant stated that her "concentration is normally all over the place," which she believes to be caused by her high anxiety. Tr. 46. She states that her focus gets "blurry," "cloudy," and "just doesn't seem right." *Id.* She also experiences depression, and isolates herself from family and friends. *Id.* Claimant is on several medications to help her sleep due to her nightmares regarding her abuse, to counteract anxiety and depression, and to help her overcome her opioid addiction.[3] Tr. 47. In addition to these mental conditions, Claimant experienced migraines approximately twice a month that made her throw up, and forced her to stay inside with the lights off for up to three days. Tr. 50.

---

[3] At the time of her hearing, Claimant had not used cocaine or heroin in over two years. Tr. 43.

With respect to her activities of daily living, Claimant testified that she lives with her six-year-old daughter in an apartment. Tr. 42. She keeps the apartment "as clean as [she] can," but sometimes goes a couple of days without doing the dishes or taking out the trash. Tr. 48. She does her own grocery shopping, but avoids times when the grocery store is crowded. Tr. 48. She cooks such things as chicken, spaghetti, ravioli, and tacos for her daughter, is able to drive, and was looking forward to her daughter starting T-ball. Tr. 49–50. As to hobbies and interests, she likes to write, but has trouble with reading comprehension; she also takes walks to help ease her anxiety. Tr. 51.

In addition to Claimant's testimony, the ALJ also took testimony from an impartial vocational expert (VE) at the hearing. In response to a hypothetical proposed by the ALJ that involved medium exertional work levels with limitations relevant to Claimant's mental impairments, the VE identified a number of positions available in the national economy. Tr. 53–54. However, the VE testified that the work would be precluded if an individual was off-task for more than 10% of the workday. Tr. 54. She also testified that someone in the initial six months of her job would "more than likely" be terminated if she began to take a day off of work every few weeks. Tr. 55.

C. The ALJ's Decision

On May 8, 2020, the ALJ issued a decision finding that Claimant was not disabled, and therefore did not qualify for DIB or SSI benefits. Tr. 32.

At the outset, the ALJ found that Claimant met the insured status requirements for DIB benefits[4] through March 31, 2022. Tr. 25. Then, at step one of the Commissioner's

---

[4] Claimants must meet the insured status requirements of the Social Security act to be eligible for DIB benefits. See 42 U.S.C. § 423(c); 20 C.F.R. § 404.130.

4

"five-step, sequential evaluation process,"[5] the ALJ found that Claimant had not engaged in substantial gainful activity since the alleged onset date of July 18, 2018. Tr. 25.

At step two, the ALJ determined that Claimant has had the following severe impairments: anxiety disorder, affective disorder, attention deficit hyperactivity disorder (ADHD), trauma and stressor-related disorders, asthma, headaches, and obesity. Tr. 25. In addition, she found that Claimant's medically determinable physical impairments of hypertension, small hepatic and adrenal masses, language-based learning disability, and substance abuse, were non-severe. *Id*. The ALJ noted that Claimant also complained of migraines, but that he found no objective medical evidence in the record to support Claimant's claims that the migraines were an impairment. *Id*.

At step three, the ALJ found that the severity of Claimant's impairments did not meet or medically equal the criteria of listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 25–26. At steps two and three, the ALJ also performed the "special technique" required under 20 C.F.R. § 404.1520a and § 416.920a for all mental impairments,[6] and

---

[5] In addition to the insured status requirements for DIB benefits, the Social Security Administration has outlined a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner only to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Asture*, 566 F.3d 303, 306 (2d Cir. 2009).

[6] When a claimant alleges a mental impairment, the Commissioner's regulations require the ALJ to apply a "special technique" at the second and third steps of the five-step evaluation process. *Petrie v. Astrue*, 412

found that Claimant had moderate limitations in her ability to understand, remember or apply information, to interact with others, and to adapt or manage herself; and only mild limitations in her ability to concentrate, persist, or maintain pace. Tr. 26–27. She also found that the "Paragraph C" requirements were not satisfied. Tr. 27.

Then, before proceeding to step four, the ALJ carefully considered the entire record and determined that Claimant had the residual functional capacity[7] ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c) and § 416.967(c), with the following limitations:

> [She] should avoid concentrated exposure to temperature extremes, wetness, humidity and vibration; and she should avoid concentrated exposure to inhaled pulmonary irritants such as fumes, odors, dust, gases, and poor ventilation. She can work at moderate noise levels; she can understand, remember and carry out simple work instructions and tasks at an SVP level of "2"; and she can have occasional contact with supervisors, co-workers and the public. However, she should not do teamwork types of job duties; and she should not work with the public as a primary job duty.

Tr. 28 (footnotes omitted).

At step four, the ALJ found that Claimant has no past relevant work. Tr. 30. At step

---

F. App'x 401, 408 (2d Cir. 2011) (citing 20 C.F.R. § 404.1520a). First, the ALJ must evaluate the claimant using "Paragraph A" criteria to evaluate the claimant's pertinent symptoms, signs, and laboratory findings and determine whether he or she meets the requirements of one of the mental impairments listed in 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 ("App'x 1, § 12.00"). *See* 20 C.F.R. § 404.1520a(b)(1); § 416.920a(b)(1). If the claimant does have such an impairment, the ALJ must assess the claimant's limitations in four broad areas of mental functioning that constitute the Paragraph B criteria: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself (collectively, the "Paragraph B criteria"). 20 C.F.R. § 404.1520a(c)(3); § 416.920a(c)(3).

The ALJ must rate the degree of the claimant's limitation in each of the Paragraph B criteria using a five-point scale: none, mild, moderate, marked, or extreme. 20 C.F.R. § 404.1520a(c)(4); § 416.920a(c)(4). To satisfy the "Paragraph B" criteria, a claimant's mental disorder must result in extreme limitation of one, or marked limitation of two, of the four criteria. App'x 1, § 12.00F(2). After rating the degree of functional limitation resulting from the claimant's mental impairment(s), the ALJ must then determine the severity of the mental impairment(s). 20 C.F.R. § 404.1520a(d); § 416.920a(d).

[7] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545, § 416.945.

five, after properly considering the Medical-Vocational Guidelines the ALJ found that a sufficient number of jobs existed in the national economy that Claimant could perform based on her age, education, work experience, and RFC: laborer, stores; linen room attendant; and hand packager. Tr. 31. Therefore, the ALJ found that Claimant was not disabled, and not entitled to DIB or SSI benefits. Tr. 32.

On November 12, 2020, the Commissioner's Appeals Council denied Claimant's request to review the ALJ's decision. Tr. 7. The ALJ's decision thus became the "final decision" of the Commissioner.

## III. LEGAL STANDARD

Under 42 U.S.C. § 423(d), a claimant is disabled and entitled to disability insurance benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months.'" 42 U.S.C. § 405(g) defines the process and scope of judicial review of the Commissioner's final decision as to whether a claimant has a disability that would entitle him or her to an award of benefits. The fourth sentence of § 405(g) empowers the reviewing court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The sixth sentence authorizes the reviewing court to "order additional evidence to be taken before the Commissioner of Social Security . . . upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *See Tirado v. Bowen*, 842 F.2d 595 (2d Cir. 1988).

"The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted). Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, "[t]he threshold question is whether the claimant received a full and fair hearing." *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018). Then, the reviewing court must determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the claimant received a full and fair hearing, and the correct legal standards are applied, the district court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"Whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal citation and quotation marks omitted). Consequently, once an ALJ finds facts, a reviewing court can reject those facts only if a reasonable factfinder would have to conclude otherwise. *See Brault*, 683 F.3d at 448. *See also Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (quoting *Valente v. Secretary of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984) (a reviewing court

should not 'substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon de novo review.').

## IV. DISCUSSION

In her motion for judgment on the pleadings, Claimant maintains that the Commissioner's RFC determination is not supported by substantial evidence, and is based on errors of law and fact. Pl. Mem. of Law, Jan. 4, 2022, ECF No. 19-1. Specifically, Claimant argues that the ALJ erred by substituting his own opinion for the opinion of medical experts, and by failing to properly develop the record. *See, e.g.,* Pl. Mem. of Law at 24. The Commissioner maintains that the ALJ did not commit legal error in his decision, and that the ALJ's RFC determination was based on substantial evidence. Def. Mem. of Law, Feb. 1, 2022, ECF No. 20-1.

A. The ALJ's Treatment of Opinion Evidence

The ALJ's explanation of his RFC determination spans three pages and, in addition to considering Claimant's symptoms and the objective evidence, discusses four medical opinions regarding Claimant's mental status. First, the ALJ found the medical opinion of Dr. S. Juriga, Ph.D., the state agency psychological consultant who had reviewed Claimant's records through September 2018, to be persuasive because it was supported by findings from the record and was consistent with the record as a whole. Tr. 29. Second, the ALJ found the medical opinions expressed by consultative psychological examiner Adam Brownfeld, Ph.D., also to be persuasive because Dr. Brownfeld "support[ed] his opinions with detailed findings included in his report of examination" that were generally consistent with the record as a whole. Tr. 30. Third, the ALJ found the statement by Virginia Wohltmann, M.D. that Claimant's emotional distress "interferes with her

9

functioning" to be unpersuasive because the statement was both vague and did not allow for interpretation of a restriction. Tr. 30. Lastly, the ALJ was not persuaded by the statements from Claimant's chemical dependency counselor, Danielle Ludeke, because they failed to "address Claimant's functional capability relative to specific work-related functions." Tr. 30.

In the motion now before the Court, Claimant argues that Dr. Juriga's opinion was "useless" because it did not render a function-by-function mental RFC opinion," and characterizes the ALJ's discussion of the remaining three opinions as "effectively reject[ing] all medical opinions in the record regarding [Claimant]'s mental limitations . . . ." Pl. Mem. of Law at 18, 21. Based on this characterization, Claimant maintains that "having effectively rejected all medical opinions in the record, the ALJ erred in formulating a function-by-function mental RFC with various limitations on his own as a lay person without any medical authority." Tr. 17.

*Legal Principles*

20 C.F.R. § 404.1546 and § 416.946 provide that the determination of a claimant's RFC is an issue reserved to the Commissioner. *See also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (discussing 20 C.F.R. § 404.1527(d)(2)). Thus, "the ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as [the conclusion] is supported by substantial evidence." *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (affirming what had originally been held summarily in *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)). *See also Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109–10 (2d Cir. 2020) (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013)). Nevertheless, the Second Circuit has consistently warned ALJs not to

"arbitrarily substitute [their] own judgment for competent medical opinion." *Riccobono v. Saul*, 796 F. App'x 49, 50 (2d Cir. 2020) (quoting *McBrayer v. Secretary of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983)); *see also Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

*Application*

After carefully reviewing the record and the ALJ's decision, the Court finds that Claimant's characterization of the ALJ's discussion of the opinion evidence is inaccurate, and that the ALJ did not commit reversible error in his discussion of the opinion evidence.

To begin with, Claimant's assertion that "Dr. Juriga did not render a function-by-function mental RFC opinion" is flatly wrong. While it is true that the particular page that Claimant cited in the record reflected Dr. Juriga's application of a "psychiatric review technique" to determine the severity of Claimant's mental impairments (Tr. 64), it is also true that three pages later, Dr. Juriga completed a "Mental Residual Functional Capacity Assessment," in which he specifically opined upon a series of mental functions related to Claimant's capacity to work (Tr. 67–69). For instance, with respect to Claimant's "social interaction limitations," Dr. Juriga opined that Claimant was "moderately limited" in her ability to interact appropriately with the public, and to respond appropriately to instructions and criticisms from her supervisor, but that there was no evidence of limitation in her ability to ask simple questions or request assistance. Tr. 68. Further, Dr. Juriga's functional capacity assessment referred the reader back to a lengthy narrative he wrote discussing the evidentiary basis for his findings. Tr. 63–64. Consequently, the Court strongly disagrees with Claimant's interpretation of Dr. Juriga's opinion as "useless."

In addition, the Court disagrees with Claimant's interpretation of the ALJ's decision as "rejecting" Dr. Brownfeld's medical opinion. To be sure, the ALJ did state that he believed the record showed the Claimant had greater limitations in social functioning than those identified in Dr. Brownfeld's opinion. Tr. 30. However, the ALJ's RFC determination is consistent with Dr. Brownfeld's opinion in significant other respects. In particular, following his psychiatric examination of Claimant, Dr. Brownfeld opined that "[t]here is no evidence of limitation in understanding, remembering, and applying simple directions and instructions . . . . [but that Claimant] is mildly limited in applying complex directions and instructions; interacting adequately with supervisors, co-workers, and the public . . . and sustaining an ordinary routine and regular attendance at work." Tr. 330–31. Similarly, the ALJ found that Claimant has the RFC to "understand, remember and carry out simple work instructions and tasks . . . and can have occasional contact with supervisors, co-workers, and the public." Tr. 28. Further, in his explanation of the RFC determination, the ALJ cited Dr. Brownfeld's mental status examination as evidence of Claimant's "increasingly positive mental status findings." Tr. 29. The Court declines to find that such consistency between Dr. Brownfeld's opinion and the ALJ's RFC determination, coupled with the ALJ's statement that he found Dr. Brownfeld's opinion to be persuasive, constitutes a "rejection" of Dr. Brownfeld's opinion.

Lastly, the ALJ not only indicated that he found Dr. Juriga's and Dr. Brownfeld's opinions persuasive, and formulated an RFC consistent with those opinions, but he also supported his RFC determination with substantial record evidence. The ALJ acknowledged Claimant's history of sexual abuse and PTSD, but pointed to multiple notes in the record indicating that "she has sought treatment that is benefitting her." Tr. 28 (citing

12

treatment notes from Licensed Master Social Worker Elliott, her mental health counselor (Tr. 272–73; 392); Dr. Matthew Fernaays, her primary care physician (Tr. 353, 495); and nurse practitioner Amanda Lewis (Tr. 490)). Likewise, the ALJ noted Claimant's history of opiate and alcohol dependence, but pointed to records that indicate "she has been successfully treated" and is "continuing to excel in outpatient treatment." Tr. 28 (citing evidence from Dr. Fernaays (Tr. 287, 344); LMSW Elliott (Tr. 392); and her chemical dependency counselor, Ms. Ludeke (Tr. 487, 500)). Finally, the ALJ observed that Claimant is "continuing to work on her coping skills, achieve greater emotional stability and deal with the stress of seeing her father (a perpetrator) in court . . . [and] she demonstrates increasingly positive mental status findings overall." Tr. 28–29 (citing evidence from Dr. Brownfeld (Tr. 330); Dr. Fernaays (Tr. 342); LMSW Elliott (Tr. 392); and nurse practitioner Lewis (Tr. 492–93)).

B. Duty to Develop the Record

Claimant also argues that "since the ALJ effectively rejected all medical opinions in the record regarding [Claimant]'s mental limitations, an evidentiary gap was created in the record." Pl. Mem. of Law at 21. Claimant therefore maintains that the ALJ ought to have contacted Dr. Wohltmann, who Claimant indicates to be her "treating psychiatrist," and Dr. Fernaays, her primary care physician, to clarify opinions that the ALJ characterized in his decision as "vague." Pl. Mem. of Law at 22–23. The Court finds no merit in either the claim that the ALJ failed in his duty to develop the record, or the claim that the ALJ had the duty to recontact Dr. Wohltmann and Dr. Fernaays for further elaboration on their opinions.

*Legal Principles*

It is a well-established rule in the Second Circuit that, even when a claimant is represented by counsel, "the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508–09 (2d Cir. 2009); *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). Some district courts have found that the ALJ's duty in this regard is heightened when a claimant alleges a mental illness. *See, e.g., Stack v. Comm'r of Soc. Sec.*, 2020 WL 5651601, *3 (W.D.N.Y. Sept. 23, 2020). "Failure to sufficiently develop the administrative record results in the denial to claimant of a full and fair hearing and is thus grounds for remand." *Price ex rel. A.N. v. Astrue*, 42 F. Supp.3d 423, 432 (E.D.N.Y. 2014).

Specifically, pursuant to 20 C.F.R. § 404.1512(b) and § 416.912(b)(1), the ALJ is responsible for developing a claimant's complete medical history for at least the twelve months preceding the month in which the claimant filed her application, and "make every reasonable effort" to help the claimant get medical evidence from her medical sources. Under the regulations, "complete medical history means the records of [the claimant's] medical source(s) covering at least the 12 months preceding the month in which [the claimant] file[s his or her] application." 20 C.F.R. § 404.1512(b)(1)(ii). Further, "every reasonable effort" means that the Commissioner:

> will make an initial request for evidence from [the claimant's] medical source or entity that maintains [the claimant's] medical source's evidence, and, at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, [the Commissioner] will make one follow-up request . . . .

20 C.F.R. § 404.1512(b)(1)(i). In furtherance of this end, the ALJ has discretionary power to "issue subpoenas for the appearance and testimony of witnesses and for the

production of books, records, correspondence, papers, or other documents that are material to an issue at a hearing." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998) (quoting 20 C.F.R. § 404.950(d)(1)).

However, the ALJ is not required to seek additional evidence when the record is "adequate for [the ALJ] to make a determination as to disability." *Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)). A record is adequate to make a determination where there are no "obvious gaps," and a "complete medical history" exists. *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999).

*Application*

In the present case, Claimant has not demonstrated that there were gaps in the record, or that the ALJ failed in his duty to develop the record. Most obviously, as indicated above, the Court does not agree with Claimant's interpretation of the ALJ's decision as "rejecting" all medical opinions. In fact, the ALJ found two of the medical opinions to be persuasive, and cited substantial evidence in the record that supported both the persuasive opinions and the ALJ's RFC determination. *See Janes*, 710 F. App'x at 34 (finding no duty to further develop the record where the record is adequate to make an RFC determination).

Equally relevant, at Claimant's hearing, the ALJ directly asked Claimant's counsel whether there were any missing records, and how much time counsel needed to obtain the records. Tr. 39–40. Counsel replied that they were still waiting on records from the Genesee Orleans Council on Alcoholism and Substance Abuse (GOCASA) regarding Claimant's substance abuse treatment, and that she needed approximately two weeks to obtain the records. Tr. 40. Accordingly, the ALJ admitted exhibits "1A through 11F into

the record and [held] the record open for additional records." Tr. 40. The record before this Court indicates that the ALJ received one additional record following the hearing, a statement from Claimant's chemical dependency counselor at GOCASA, Danielle Ludeke, which was referenced in the ALJ's decision (Tr. 30), and which indicated that Claimant "has exemplified a profound motivation for recovery . . . . [and] is excelling in outpatient treatment . . . ." Tr. 500. There is no record of any further requests from Claimant's counsel to the ALJ to help obtain additional records. *See, e.g., Jordan v. Comm'r of Soc. Sec.*, 142 F. App'x 542, 543 (2d Cir. 2005) (finding no error where additional records were never submitted, despite claimant's counsel advising the ALJ of missing records and obtaining additional time, but never seeking assistance from the ALJ to obtain the records).

Under these circumstances, the Court declines to find that there was a gap in the evidentiary record, or that the ALJ failed in his duty to develop the record.

## V. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Claimant Ariel P.'s motion for judgment on the pleadings [ECF No. 19] is denied, the Commissioner's motion for judgment on the pleadings [ECF No. 20] is granted, and the Clerk of Court is directed to close this case.

DATED:   March 6, 2023
         Rochester, New York

                                          _____
                                          CHARLES J. SIRAGUSA
                                          United States District Judge